**KOLLER LAW LLC**
David M. Koller, Esq. (90119)                              *Attorney for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **KAREN FISCHER** | : | **Civil Action No.** |
| **557 Dunkard Church Road** | : | |
| **Cogan Station, PA 17728** | : | |
| *Plaintiff,* | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **CABLE SERVICES COMPANY, INC.** | : | |
| **2113 Marydale Avenue** | : | |
| **Williamsport, PA 17701** | : | |
| *Defendant.* | : | |

### CIVIL ACTION

Plaintiff, Karen Fischer (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against Cable Services Company, Inc., (hereinafter "Defendant"), for violations of the Fair Labor Standards Act ("FLSA"), the Age Discrimination in Employment Act ("ADEA"), Title VII of the Civil Rights Act of 1964, as amended, and the Pennsylvania Human Relations Act ("PHRA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Cable Services Company, Inc. is a service provider to the telecommunications and industrial industries with a location and headquarters at 2113

Marydale Avenue, Williamsport, PA 17701.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.   In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's

original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Middle District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under the ADEA and Title VII.

13. Plaintiff timely filed a Complaint of Discrimination ("Complaint") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging age and sex discrimination and retaliation against Defendant.

14. The Complaint was assigned a Charge Number 530-2017-03961 and was dual filed with the Pennsylvania Human Relations Commission.

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated November 22, 2017. Plaintiff received the notice by mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

**MATERIAL FACTS**

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. On April 4, 2011, Defendant hired Plaintiff in the position of Human Resource Manager.

21. Plaintiff was well qualified for her position and performed well.

22. In August 2012, Plaintiff noticed that male managers, including, but not limited to, George Schuman, Market Research Manager, were given two (2) weeks of paid vacation upon their hire.

23. In addition, Rex Barnhart, Pipeline Manager, and Stan Carrier, Senior Project Manager, were given one (1) week of paid vacation in their offer letters, but Defendant allowed them to take two (2) weeks of paid vacation upon their hire.

24. However, Plaintiff was only given one (1) week of paid vacation after being employed for 90 days.

25. In October 2012, Roy Leech, Supervisor, and Chris Claycombs, Lineman, were caught putting alcohol on their expense reports and having Defendant reimburse them for these personal expenses.

26. Plaintiff assisted Jeremy Michaels, VP of Operations, in preparing the written disciplines for Mr. Leech and Mr. Claycombs.

27. However, Mr. Michaels did not issue the written disciplines to Mr. Leech or Mr. Claycombs.

28. In addition, upon information and belief, Defendant did not require Mr. Leech or Mr. Claycombs to pay Defendant back.

29. Plaintiff also began to notice a difference concerning pay raises Defendant issued to male employees and younger employees.

30. Defendant issued Plaintiff sporadic pay raises which were approximately between $1 and $1.50 per hour.

31. However, Defendant issued male employees and younger employees raises at arbitrary times, in addition to annual evaluations, that were anywhere between $2 and $5 per hour.

32. In addition, Defendant held male and female employees to different standards on its dress code policy.

33. Female employees were required to dress formally at all times, while male employees were allowed to wear jeans and dress casually even when they were not required to go into the field.

34. In 2013, after Ken Michaels, CEO, berated Darren Wilson, IT Manager, for a minor issue, Plaintiff explained to Mr. Michaels (CEO) that his expletive-filled tirade was not effective and had upset Mr. Wilson.

35. Mr. Michaels (CEO) responded to Plaintiff, "You women always have a habit of saying too much."

36. On January 16, 2015, Plaintiff met with Mr. Michaels (VP) for her performance evaluation and was notified that she would no longer be reporting to Mr. Michaels, but instead would report to Melissa Jackson (mid-30's), Office Manager.

37. This effectively segregated the female employees from the male employees at Defendant.

38. On February 26, 2015, Plaintiff was forced to extend her leave of absence from three (3) days to four (4) days because her flight was cancelled due to inclement weather.

39. However, despite being a salaried employee, Defendant docked Plaintiff's pay for three (3) days.

40. Upon information and belief, Jeff Matlack, Fleet Manager, Tim Becker, Supervisor, Rex Barnhart, Supervisor, and Brian Landis, Supervisor, were not docked pay when they had to take an additional day(s) off.

41. On November 1, 2015, Plaintiff filed a Charge of Discrimination with the EEOC alleging gender discrimination against Defendant.

42. On December 11, 2015, Defendant was given notice of Plaintiff's Charge of Discrimination.

43. On December 18, 2015, the day before Plaintiff left for a two (2) week vacation, Mr. Michaels (VP) and Neal Kimberling, Senior VP, met with Plaintiff to discuss her Charge and they questioned her as to why she filed with the EEOC.

44. They informed Plaintiff that they would address her concerns when she returned from vacation.

45. However, when Plaintiff returned from vacation neither Mr. Michaels (VP) nor Mr. Kimberling discussed Plaintiff's EEOC Charge again with her.

46. Following the filing of Plaintiff's EEOC Charge in 2016, Mr. Michaels (CEO) made comments about an employee causing trouble for Defendant and having poor work performance during supervisor meetings held every Thursday.

47. These comments were clearly directed towards Plaintiff, as Mr. Michaels (CEO) poked Plaintiff in the back after making such a comment in a supervisor meeting.

48. In or around June 2016, Plaintiff notified Mr. Michaels (CEO) she was going to withdraw her Charge.

49. Mr. Michaels (CEO) informed Plaintiff that it would be "appreciated."

50. In October 2016, Mr. Michaels (CEO) organized a skeet shooting event for the male employees of Defendant.

51. The trip lasted one (1) business days, in which Defendant paid for all of the employees' expenses.

52. However, the female employees were required to stay and work at Defendant during the event.

53. On February 20, 2017, Ms. Jackson announced that she was resigning from Defendant effective March 10, 2017.

54. Defendant posted the Office Manager position as available, but did not ask Plaintiff or notify her that she could apply. Plaintiff was qualified for that position.

55. Approximately one (1) week later, Plaintiff emailed Mr. Michaels (CEO) that she was interested in applying for the vacant Office Manager position, but wanted to speak with him about it.

56. That same day, Plaintiff went to Mr. Michaels' (CEO) office to discuss the Office Manager position.

57. Mr. Michaels stated to Plaintiff that if she was interested in the position, she should have applied, but it was too late as Defendant had already selected Janette Zellers (mid-30's), an external hire, for the role.

58. On March 15, 2017, Defendant was forced to close due to a snowstorm.

59. Mr. Michaels (CEO) requested that salaried employees have their pay docked for that day due to Defendant being closed.

60. On March 20, 2017, Plaintiff met with John Calhoun, Controller, and Jamie Straub, Payroll Administrator, to discuss Mr. Michaels' (CEO) request.

62. Plaintiff informed Mr. Calhoun and Mr. Straub that Defendant would not be able to dock salaried employees' because doing so would violate the Fair Labor Standards Act ("FLSA").

63. On March 21, 2017, Mr. Michaels (CEO) came to Plaintiff's office and instructed her to write a policy for Defendant that would allow Defendant to dock the pay of salaried employees if Defendant was forced to close again due to inclement weather.

64. On March 22, 2017, Plaintiff was summoned by Mr. Michaels (CEO) to the conference room to meet with him and Mr. Kimberling.

65. Once in the conference room, Mr. Michaels (CEO) terminated Plaintiff due to her not being "a good fit." Plaintiff had no previous disciplines or negative performance evaluations.

66. It is Plaintiff's position that Defendant discriminated against Plaintiff due to her age and gender in violation of the ADEA and Title VII and that Defendant retaliated against Plaintiff for taking part in protected activity in violation of Title VII and for refusing to dock salaried employees' pay in violation of the FLSA.

## COUNT I – RETALIATION
## FAIR LABOR STANDARDS ACT

67. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

68. Defendant employed Plaintiff within the meaning of the Fair Labor Standards Act, 29 U.S.C. § 203(d).

69. Plaintiff engaged in protected activity when she verbally complained to Defendant that Defendant's request would violate the Fair Labor Standards Act.

70. Defendant then terminated Plaintiff.

71. The adverse employment action is causally related to the protected activity.

72. Defendant retaliated against Plaintiff.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT II – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

73. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

74. Plaintiff was born on May 26, 1957.

75. Plaintiff was qualified to perform the job.

76. Defendant terminated Plaintiff and she suffered adverse employment actions.

77. Defendant treated younger employees more favorably than Plaintiff at times during Plaintiff's employment as described herein.

78. Defendant has no legitimate non-discriminatory reason for its actions.

79. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT III – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

80. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

81. Plaintiff was born on May 26, 1957.

82. Plaintiff was qualified to perform the job.

83. Defendant terminated Plaintiff and she suffered adverse employment actions.

84. Defendant treated younger employees more favorably than Plaintiff at times during Plaintiff's employment as described herein.

85. Defendant has no legitimate non-discriminatory reason for its actions.

86. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – GENDER DISCRIMINATION
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

87. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

88. Plaintiff is a member of a protected class in that she is female

89. Plaintiff was qualified to perform the job for which she was hired.

90. Similarly situated persons outside of Plaintiff protected classes were treated more favorably than Plaintiff at times during Plaintiff's employment as descried herein.

91. Defendant terminated Plaintiff and she suffered adverse employment actions.

92. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

93. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

94. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT V – GENDER DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. Plaintiff is a member of protected classes in that she is female.

97. Plaintiff was qualified to perform her job.

98. Plaintiff was qualified to perform the job for which she was hired.

99. Similarly situated persons outside of Plaintiff protected classes were treated more favorably than Plaintiff at times during Plaintiff's employment as described herein.

100. Defendant terminated Plaintiff and she suffered adverse employment actions.

101. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

102. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

103. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

### COUNT VI – RETALIATION
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED

104. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

105. Plaintiff engaged in activity protected under Title VII when she filed a Charge of Discrimination with the EEOC against Defendant.

106. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

107. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment actions.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

108. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

109. Plaintiff engaged in activity protected under the PHRA when she filed a Charge of Discrimination with the EEOC against Defendant.

110. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

111. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment actions.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Karen Fischer, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of the FLSA, the ADEA, Title VII, and the PHRA.

(j)     Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: February 23, 2018          By:

David M. Koller, Esquire
Attorney ID No. 90119
2043 Locust Street, Suite 1B
Philadelphia, PA 19103

215-545-8917
davidk@kollerlawfirm.com

*Counsel for Plaintiff*