**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| KAREN FISCHER, | : | Civil No. 4:18-CV-00455 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| CABLE SERVICES COMPANY, INC., | : | |
| | : | |
| Defendant. | : | Judge Jennifer P. Wilson |

**<u>MEMORANDUM</u>**

This is an employment discrimination case brought by Plaintiff Karen

Fischer ("Fischer") who was formerly employed as a Human Resources Manager

by Defendant Cable Services Company, Inc. ("Cable Services").  Fischer alleges

that she was discriminated against on the basis of age under the Age

Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and the

Pennsylvania Human Relations Act ("PHRA"), 43 PA. STAT. AND CONS. STAT.

ANN. § 951, *et seq.*, as well as retaliated against for raising a complaint under the

Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  Defendant has filed a

motion for summary judgment which is currently before the court.  (Doc. 34.)  The

court finds that Fischer is unable to rebut Cable Services' nondiscriminatory reason

for terminating her employment.  Thus, for the reasons that follow, Defendant's

motion for summary judgment is granted in its entirety.

## Factual Background and Procedural History[1]

Fischer was employed as the Human Resources Manager for Cable Services for six years between 2011 and 2017.  (Doc. 37, pp. 30, 98.)  Cable Services, a telecommunications contractor providing construction services for Comcast, is managed by Kenneth Michaels, the President; John Calhoun, the Controller; Jeremy Michaels, the Vice President of Operations; and Neal Kimberling, the Senior Vice President.  (*Id.* at 238, 524.)

In her amended complaint, and throughout her deposition, Fischer identifies workplace incidents which she alleges form the basis for her claims under the ADEA, PHRA, and the FLSA.  (*See* Doc. 10; Doc. 37, pp. 2–225.)  One such incident allegedly giving rise to Fischer's ADEA and PHRA claims occurred in early 2017 when Fischer learned that Cable Services' Office Manager, Melissa Jackson, would be resigning, effective February 20, 2017.  (Doc. 37, pp. 42–43.) Fischer testified that she was interested in the position, but ultimately decided not to apply because she thought the company was seeking to hire an external candidate, although she did not confirm this suspicion with anyone in the office

---

[1] In considering the Defendant's motion for summary judgment, the court relied on the uncontested facts, or where the fact were disputed, viewed the facts and deduced all reasonable inferences therefrom in the light most favorable to Fischer as the nonmoving party in accordance with the relevant standard for deciding a motion for summary judgment.  *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 362 (3d Cir. 2008).

and did not reach out to discuss the position with anyone in upper management. (*Id.* at 43–45, 51.)

However, on March 7, 2017, Fischer reached out to Kenneth Michaels via email to ask whether she could discuss the Office Manager position with him before he made his final decision.  (*Id.* at 53.)  In her email, Fischer related that she simply wished to discuss the position, but did not express an interest in applying at that time.[2]  (*Id.* at 54, 62.)  When she attended this meeting later the same day, and after she had expressed interest in applying for the position, Kenneth Michaels informed her that he had already hired someone to fill the Office Manager position.[3]  (*Id.* at 55.)

After this incident occurred, and the new Office Manager began working for Cable Services, Fischer did not experience any change in her employment and her rate of pay remained the same.  She maintained her position as the Human Resources Manager for Cable Services.  Fischer believed that she should not have had to apply for the Office Manager position since her employment history was positive, that she was not offered this position due to her age, and that Kenneth Michaels had extended an offer to someone else to discourage her from applying

---

[2] Fischer later stated in her deposition that she intended to meet with Kenneth Michaels so that she could express her interest in applying for this position.  (Doc. 37, p. 62.)

[3] An offer was extended to Janette Zellers on March 7, 2017, and Kenneth Michaels indicates that the offer was extended before his meeting with Fischer.  (Doc. 37, p. 380.)

due to her age.  (*Id.* at 46, 65, 93.)  However, Fischer has admitted that she merely believed this to be the case and did not have any evidence to support her belief.[4] (*Id.* at 65, 95−96.)

A second incident occurred on or around March 15, 2017, which Fischer asserts gives rise to her FLSA claim.  (*Id.* at 68.)  Cable Services was forced to close due to a snowstorm, though some employees were still able to make it to work.  (*Id.* at 66.)  On March 20, 2017, the Monday following the closure, Fischer learned that Cable Services wanted salaried employees who had been absent from work during the snowstorm to have their pay reduced for the day that they missed. (*Id.* at 68.)  Fischer did not believe that Cable Services was allowed to reduce salaried employees' pay for this absence under the FLSA, and she voiced these concerns to John Calhoun and Jamie Straub, Cable Services' Payroll Administrator, during a meeting on the same day.  (*Id.* at 67.)  The participants at this meeting agreed that the discussion remained cordial.  (*Id.* at 90, 574.)  Later, Fischer reinforced her belief with an FLSA opinion letter that she emailed to John Calhoun, and Cable Services ultimately adopted Fischer's recommendation that the employees' pay not be docked for their day off work due to inclement weather. (*Id.* at 71, 392, 399, 574.)

---

[4] Undermining Fischer's belief that she did not receive the Office Manager position due to her age, there is evidence that Kenneth Michaels, the individual who ultimately terminated Fischer's employment, had no knowledge of Fischer's age.  (Doc. 37, p. 275.)

Fischer testified that Kenneth Michaels approached her on March 21, 2017, about creating a policy for docking employees' pay in the future in the event of inclement weather.[5]  (*Id.* at 73.)  According to Fischer's testimony, she informed Kenneth Michaels that Cable Services would be able to create such a policy in the future, provided that it was communicated to the employees and was uniformly applied.  (*Id.*)  It is undisputed, however, that Fischer was never required to create such a policy.  (*Id.* at 95.)

Fischer testified that on March 21, 2017, she lost access to employees' payroll information.  (*Id.* at 76−77.)  An email exchange followed the removal of access in which Fischer asked John Calhoun what had happened to her access, and Calhoun told her that she was no longer allowed to access this information and would need to request it from Jamie Straub in the future.  (*Id.* at 78−80.)  Fischer replied by noting her belief that being denied this information interfered with her ability to do her job.  (*Id.* at 78−80.)  When Calhoun came to meet with Fischer regarding her response, he informed her that someone else made the decision to limit her access.  (*Id.* at 83−84.)  During this meeting, according to Calhoun's

---

[5] Kenneth Michaels disputes this testimony, asserting that he maintained a casual policy regarding inclement weather events and never requested that Fischer change this policy to prevent salaried employees from getting paid if they chose to stay home.  (Doc. 37, pp. 255, 392, 394−95.)  Specifically, he requested that employees come in if they could make it, but that there was no obligation to do so.  (*Id.*)

notes, Fischer stated that she "hope[d] Ken [Michaels] drives this F-ing place in the ground."[6]  (*Id.* at 85.)

On March 22, 2017, Fischer was called into a meeting with Kenneth Michaels and Neal Kimberling, during which Michaels informed Fischer that her employment was being terminated.  (*Id.* at 96–98.)  Fischer was not given a reason for the termination, and she simply left the office.  (*Id.* at 96–97.)  Fischer was 59 years old at the time her employment was terminated.  (*See* Doc. 10, p. 10.)  After Fischer's employment was terminated, her position as the Human Resources Manager was filled by a 42-year-old who was paid less per year than Fischer. (Doc. 39-2, p. 9.)

The record reflects that Cable Services maintained a disciplinary policy for its employees within its employee handbook containing five steps.  (*Id.* at 518–19.) Kenneth Michaels testified that the severity of an offense may cause the company to bypass one or more of these five steps, but that it was unusual to skip straight to termination.  (*Id.* at 264, 267.)  However, Kenneth Michaels testified that he had done so on two prior occasions.  (*Id.* at 267.)  Kenneth Michaels testified that the usual course of discipline occurred with an employee who worked in payroll, Dana.  (*Id.* at 453.)  In this instance, Dana had cursed at work, but he was not

---

[6] Fischer testified that she remembered saying "F-ing" because she never used the word, but that she did not remember the substance of the remaining conversation.  (Doc. 37, p. 85.)

terminated and instead was verbally reprimanded by Kenneth Michaels, in accord with the first step of the company's progressive discipline policy.  (*Id.* at 453.)

Fischer commenced this civil action on February 23, 2018.  (Doc. 1.)  She subsequently filed an amended complaint on August 3, 2018, alleging violations of the ADEA, the PHRA, and the FLSA.  (Doc. 10.)  On January 27, 2020, Cable Services filed the motion for summary judgment before the court.  (Doc. 34.) Fischer filed a brief in opposition and an answer to Cable Services' statement of facts.  (Docs. 39, 42.)  Cable Services timely filed a reply brief.  (Doc. 43.)  Thus, the motion for summary judgment is now ripe for review.

## JURISDICTION

Fischer alleges violations of the FLSA and the ADEA.  (*See* Doc. 7.) Pursuant to 28 U.S.C. § 1331, the court has jurisdiction over claims that arise under the laws of the United States.  The court has supplemental jurisdiction over the Fischer's state law claim pursuant to 28 U.S.C. § 1367(a).  The Middle District of Pennsylvania is the proper venue for this matter, because Cable Services' principal place of business is located within this judicial district, and all the events giving rise to the claims occurred in this judicial district.

## STANDARD OF REVIEW

A court may grant a motion for summary judgment when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a

matter of law." Fed. R. Civ. P. 56(a). A dispute of fact is material if resolution of the dispute "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is not precluded by "[f]actual disputes that are irrelevant or unnecessary." *Id.* "A dispute is genuine if a reasonable trier-of-fact could find in favor of the nonmovant' and 'material if it could affect the outcome of the case." *Thomas v. Tice*, 943 F.3d 145, 149 (3d Cir. 2019) (quoting *Lichtenstein v. Univ. of Pittsburgh Med. Ctr.*, 691 F.3d 294, 300 (3d Cir. 2012)).

In reviewing a motion for summary judgment, the court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 288 (3d Cir. 2018) (citing *Scheidemantle v. Slippery Rock Univ. State Sys. of Higher Educ.*, 470 F.3d 535, 538 (3d Cir. 2006)). The court may not "weigh the evidence" or "determine the truth of the matter." *Anderson*, 477 U.S. at 249. Instead, the court's role in reviewing the facts of the case is "to determine whether there is a genuine issue for trial." *Id.*

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the

absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). The non-moving party must then oppose the motion, and in doing so "'may not rest upon the mere allegations or denials of [its] pleadings' but, instead, 'must set forth specific facts showing that there is a genuine issue for trial. Bare assertions, conclusory allegations, or suspicions will not suffice.'" *Jutrowski*, 904 F.3d at 288–89 (quoting *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 268–69 (3d Cir. 2014)).

Summary judgment is appropriate where the non-moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## DISCUSSION

Fischer asserts claims under the ADEA and PHRA for age discrimination and under the FLSA for retaliation. In its summary judgment motion, Cable Services argues that it is entitled to judgment as a matter of law on Fischer's

ADEA, PHRA, and FLSA claims on the grounds that she has failed to establish her prima facie case, and, in the alternative, that she has failed to rebut Cable Services' proffered legitimate, nondiscriminatory reason for her termination.  (Doc. 36.)  The court will address these arguments in turn.

### A. No Reasonable Juror Could Find For Fischer On Her ADEA or PHRA Claims For Age Discrimination.

In relevant part, the ADEA prohibits employers from discriminating "against any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  Likewise, the PHRA provides that it is an "unlawful discriminatory practice" for any employer to discriminate against an individual because of age.  43 PA. STAT. AND CONS. STAT. ANN. § 955 (West 1997).[7]  Here, because Fischer's claim is based on circumstantial evidence of discrimination, it is governed by the *McDonnell Douglas* burden-shifting framework.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The *McDonnell Douglas* framework contains three steps.  At the first step, the plaintiff must establish a prima facie case of discrimination.  *Burton v. Teleflex, Inc.*, 707 F.3d 417, 426 (3d Cir. 2013).  If the plaintiff meets that burden, the burden of production shifts to the defendant to offer

---

[7] As the Third Circuit has explained, "the interpretation of the PHRA is identical to that of federal anti-discrimination laws, including the ADEA," and, therefore, a "single analysis" may be used for Fischer's claims under both statutes.  *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 643 (3d Cir. 2015) (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 972 (3d Cir. 1998) ("There is no need to differentiate between . . . ADEA and PHRA claims because . . . the same analysis is used for both.")).

a legitimate, nondiscriminatory reason for the adverse treatment of the plaintiff. *Id.* The burden then shifts back to the plaintiff to show that the proffered nondiscriminatory reason was a pretext for discrimination. *Id.* at 427.

To establish a prima facie case of age discrimination at the first step of the *McDonnell Douglas* framework, a plaintiff must show: (1) that she is at least forty years old; (2) that she suffered an adverse employment decision; (3) that she was qualified for her position; and (4) that the circumstances of the adverse employment decision were sufficient to support an inference of a discriminatory motive. *Willis v. UPMC Children's Hosp. of Pittsburgh*, 808 F.3d 638, 644 (3d Cir. 2015) (citing *Burton*, 707 F.3d at 426). A plaintiff may meet the fourth element by demonstrating that she was "replaced by a sufficiently younger person to create an inference of age discrimination." *Showalter v. Univ. of Pittsburgh Med. Ctr.*, 190 F.3d 231, 236 (3d Cir. 1999) (quoting *Keller v. Orix Credit Alliance*, 130 F.3d 1101, 1108 (3d Cir. 1997)). The Third Circuit has explained that a plaintiff's "prima facie case 'is not intended to be rigid, mechanized, or ritualistic.'" *Willis*, 808 F.3d at 644 (quoting *Pivirotto v. Innovative Sys.*, 191 F.3d 344, 352 (3d Cir. 1999)). At the summary judgment stage, the plaintiff's burden is to show that there is sufficient evidence "to convince a reasonable factfinder to find all of the elements of the prima facie case." *Burton*, 707 F.3d at 426 (quoting *Duffy v. Paper Magic Grp., Inc.*, 265 F.3d 163, 167 (3d Cir. 2001)).

Here, the court finds that Fischer has met her burden to establish a prima facie case of age discrimination.  It is undisputed that Fischer was at least 40 years old at the time her employment was terminated and was otherwise qualified for her position.  It is also clear that she suffered an adverse employment action when her employment was terminated.  Finally, there is sufficient evidence for a fact-finder to conclude that Fischer's termination "occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 169 (3d Cir. 2013).  That element is satisfied based on the evidence establishing that, after Fischer's employment was terminated, her position as the Human Resources Manager was filled by a 42-year-old who was paid less per year than Fischer.  (Doc. 39-2, p. 9.)  Viewing the facts in the light most favorable to Fischer as the non-movant, the court finds that an age gap of over ten years is sufficient at this stage to set forth Fischer's prima facie case.  *See, e.g.*, *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308, 312 (1996) (finding that "there can be no greater inference of age discrimination . . . when a 40-year-old is replaced by a 39-year-old than when a 56-year-old is replaced by a 40-year-old").

Fischer also appears to argue that she can establish her prima facie case based on Kenneth Michaels' decision to select someone else for the Office Manager position on March 7, 2017.  (Doc. 39, p. 24 n.3.)  The court finds that this

argument fails, however, because Fischer is unable to demonstrate an adverse employment decision arising from this incident.  Rather, the record demonstrates that Fischer knew about the opening, but neither applied for this position nor expressed interest in applying until after Kenneth Michaels had already extended an offer to another candidate.  (Doc. 37, pp. 44, 46, 53–54, 57, 310.)  In addition, Fischer testified that she did not have any evidence that Kenneth Michaels made an offer to another candidate to discourage her from applying because of her age; she merely believed this to be the case.  (*Id.* at 65.)  After this incident occurred, and the new Office Manager began working for Defendant, Fischer's employment status did not change and her rate of pay remained the same.  She maintained her position as the Human Resources Manager for Cable Services.  Thus, Fischer did not suffer an adverse employment action for purposes of establishing a prima facie case under the *McDonnell Douglas* framework based on this incident.

However, because Fischer has established a prima facie case of age discrimination based on the circumstances surrounding her employment termination, the burden shifts to Cable Services to offer a legitimate, nondiscriminatory reason for the adverse employment action.  *Burton*, 707 F.3d at 426.  "This burden is 'relatively light' and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the adverse

employment action for a non-discriminatory reason." *Id.* (quoting *Tomasso v. Boeing Co.*, 445 F.3d 702, 706 (3d Cir. 2006)).

In this case, Cable Services has met its burden of showing a legitimate, nondiscriminatory reason for the adverse action against Fischer because it has offered evidence that Fischer's employment was terminated after she disparaged Cable Services and its president by stating that she "hope[d] Ken [Michaels] drives this F-ing place in the ground."  Doc. 37, p. 85.  Based on this incident, Kenneth Michaels believed that Fischer could no longer be trusted to work in her capacity as Human Resources Manager with the company, a position which both parties recognize is one of trust.  (*Id.*, at 37, 264–65, 417, 437, 464.)  There is also evidence in the record that Kenneth Michaels, the individual who ultimately terminated Fischer's employment, had no knowledge of Fischer's age.  (*Id.* at 275.)  In addition, when asked whether Fischer had any evidence to support her belief that her employment was terminated because of her age, Fischer admitted that she did not.  (*Id.* at 95–96.)

Accordingly, the burden shifts back to Fischer to show that the proffered nondiscriminatory reason was a pretext for age discrimination.  *Burton*, 707 F.3d at 427.  To meet her burden at this stage, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an

invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Id.* (quoting *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994)).

Fischer has not met her burden at the third stage of the *McDonnell Douglas* framework.  In support of her assertion that Cable Services' nondiscriminatory reason was a pretext for age discrimination, Fischer claims that the inconsistencies with Cable Services' reasons for termination combined with her performance history as the Human Resources Manager could lead a reasonable jury to conclude that Cable Services' reasons for termination were weak and not credible.  (Doc. 39, p. 24.)  In addition, Fischer argues that Cable Services treated a younger employee, a male named Dana, more favorably than herself and that Kenneth Michaels' deposition testimony reveals an "ageist" bias against older employees.  (*Id.* at 24–25.)

Initially, the court does not find that the reasons given to Fischer for the termination of her employment were inconsistent.  Rather, at the time her employment was terminated, Fischer was not given any reason.  It is well-established that "an employer may have any reason <u>or no reason</u> for discharging an employee so long as it is not a discriminatory reason." *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 332 (3d Cir. 1995) (emphasis added).  Once its motivations for Fischer's employment termination were challenged in federal

court, Cable Services revealed its reasons for firing Fischer, i.e., her insubordinate conduct, disparaging the company and its president through the use of a gratuitous expletive, and for no longer being trusted to serve Cable Services' best interest in her position of trust as the Human Resources Manager.  (Doc. 37, pp. 417, 437–39, 443, 464.)  These reasons have not changed at any point during the litigation. Thus, the fact that Fischer may have wanted a reason at the time her employment was terminated does not render Cable Services' later-provided reason inconsistent, weak, or lacking credibility for purposes of the *McDonnell Douglas* framework.

Fischer's assertion that her positive work history renders Cable Services' reasons for termination weak or lacking credibility is likewise meritless.  In this vein, it is undisputed that Cable Services' reasons for terminating Fischer's employment had nothing to do with her work history or performance as the Human Resources Manager.  Instead, Fischer's employment was terminated for a single incident in which she disparaged the company and its president.[8]  Thus, the court is not persuaded that Cable Services' reasons for Fischer's employment termination, combined with her employment history, render Cable Services' reasons weak or lacking credibility.

---

[8] Even if this were not the case, it is not clear from the record that Fischer had the positive employment history she claims.  (*See, e.g.*, Doc. 37, pp. 276–80, 282–83, 290–91, 313, 352, 357–58.)

The court is likewise unpersuaded by Fischer's assertion that a younger, similarly situated employee, Dana, was treated more favorably than Fischer because the court finds that Dana was not similarly situated to Fischer.  To determine whether employees are similarly situated, a court must engage in a fact-intensive inquiry in which it considers "job function, level of supervisory responsibility and salary, as well as other factors relevant to the particular workplace." *Monaco v. Am. Gen. Assur. Co.*, 359 F.3d 296, 305 (3d Cir. 2004) (citing *Pivirotto*, 191 F.3d at 357).  Similarly situated employees generally have "'the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it.'" *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 681 (M.D. Pa. 2008) (quoting *Ogden v. Keystone Residence*, 226 F. Supp. 2d 588, 603 (M.D. Pa. 2002)).  To establish that employees are similarly situated, "a plaintiff need not show that [they] are identical in all relevant aspects but rather that they share pertinent similarities." *Archer v. York Cty. Sch. Dist.*, 227 F. Supp. 3d 361, 371 (M.D. Pa. 2016) (citing *Borrell v. Bloomsburg Univ.*, 955 F. Supp. 2d 390, 405 (M.D. Pa. 2013)).

Here, the court concludes that Dana was not similarly situated to Fischer because the record shows that they were not performing the same work.  Dana

worked in payroll while Fischer was the Human Resources Manager and they did not have the same direct supervisor.  (Doc. 37, p. 453.)  Furthermore, there is no evidence that Dana had a similar incident to Fischer in which he disparaged the company or its president.  (*Id.*)

Finally, the court is not convinced that Kenneth Michaels displayed an "ageist" bias against Fischer during his deposition.  At the pertinent section of his deposition, Kenneth Michaels was describing his one-on-one meeting with Fischer during which the Office Manager position was discussed.  After telling Fischer that he had already hired an office manager, Fischer asked Michaels why he had not "run that by [her]" before making the decision.  (*Id.* at 375.)  Michaels stated that he was taken aback by the comment, wondering whether Fischer had some lapse in memory or judgment since she was not responsible for hiring new employees and did not have any say in the final decision outside of her role on the hiring committee, which she should have known.  (*Id.*)  In attempting to express this sentiment, Michaels stated that:

> I'm like okay, so – almost to the point where with Karen it was a memory loss or there was something more along the way.
>
> There was – there was more than we've even testified for [sic].  There was just – maybe – hey, she was – she's probably my age, I don't remember everything.  My – my memory is not the greatest either.
>
> So there was something there with her performance that – that actually lent [sic] me to believe there was a memory – aging or not – you're not as efficient as a 20-year-old anymore.  None of us are, right, 25 year

old.  It just had that – you know, it just seemed that way every once in
a while.

And then when she comes off the wall with some of these comments,
it's like wait a minute, were you missing somewhere in this whole
process.  You can't believe that sometimes, you know, people make
those comments, but then my job is to figure out okay, so is that – is
there something else to that, you know.

(*Id.* at 374–77.)

It appears that Michaels' off-handed comment regarding memory issues and
the relative efficiency of 20 or 25-year-olds forms the basis for Fischer's belief that
Michaels maintained some bias against older employees.  The court does not find
that this off-handed comment is sufficient to demonstrate some underlying bias
towards older employees.  Michaels stated that Fischer was "probably [his] age"
and that "[n]one of us are" as efficient as a 20 or 25-year-old.  (*Id.*)  Further, there
is no evidence that this conversation or that Michaels' views regarding what
happens to the human mind during the aging process played any role in his
decision to terminate Fischer.  Rather, Michaels made this comment while
describing the fallout with Fischer regarding the office manager position, which
occurred several weeks before his decision to terminate Fischer's employment and
which we have already found cannot establish Fischer's prima facie case for age
discrimination.  There is no obvious connection between Michaels' off-handed
comment regarding the office manager position and the termination of Fischer's
employment.  Thus, the court finds that a reasonable factfinder would not "either

19

(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764). Therefore, Cable Services' motion for summary judgment will be granted as to Fischer's age discrimination claims.

### B. No Reasonable Juror Could Find For Fischer On Her FLSA Claim.

The FLSA states, in pertinent part, that "[i]t shall be unlawful for any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). An employee may "file" a complaint for purposes of the FLSA by voicing an oral complaint that is "sufficiently clear and detailed for a reasonable employer to understand it, in light of both content and context, as an assertion of rights protected by the statute and a call for their protection." *Kasten v. Saint-Gobain Performance Plastics Corp.*, 563 U.S. 1, 14 (2011).

Claims for retaliation under the FLSA are analyzed under the same burden-shifting framework described above in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Cononie v. Allegheny Gen. Hosp.*, 29 F. App'x 94, 95 (3d Cir. 2002). At the first step, the plaintiff must establish a prima facie case of retaliation. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 300 (3d Cir. 2007). If the

plaintiff meets that burden, the burden of production shifts to the defendants to offer a legitimate non-retaliatory reason for the adverse treatment of the plaintiff. *Id.* The burden then shifts back to the plaintiff to show that the proffered non-retaliatory reason was a pretext for retaliation. *Id.* at 427. To establish a prima facie case of retaliation, a plaintiff must show "(1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Id.*

Here, the court finds that Fischer has met her burden to establish a prima facie case of FLSA retaliation. In March 2017, Fischer became aware that Cable Services wished to reduce salaried employees' pay when they were unable to come into the office due to inclement weather, and she expressed her belief that such action would violate the FLSA during a meeting with Calhoun and Straub. (Doc. 37, pp. 69–70.) She followed up this meeting with an email containing a link to an FLSA opinion letter stating the same. (*Id.* at 71.)

While the Third Circuit has not addressed whether informal complaints to supervisors, such as the one Fischer made, qualify as a protected activity under the FLSA, district courts within the Third Circuit that have considered this issue have determined that, in light of the remedial nature of the FLSA and its liberal construction, it is appropriate to extend protection to informal complaints made to

supervisors.  *See, e.g.*, *Jones v. Amerihealth Caritas*, 95 F. Supp. 3d 807, 814 (E.D. Pa. 2015) ("[S]ufficiently pleading an informal complaint to an employer may qualify as protected activity under § 215(a)(3)"); *Dougherty v. Ciber, Inc.*, No. 04-cv-1682, 2005 U.S. Dist. LEXIS 50529, at *6–9 (M.D. Pa. July 26, 2005) (holding that plaintiff, who was a Human Resources Manager and was terminated after informing her employer that it was not in compliance with the FLSA, was allowed to maintain a retaliation claim because "the phrase 'filed any complaint' affords employees who make informal complaint protection under section 215(a)(3)"); *Coyle v. Madden*, No. 03-4433, 2003 U.S. Dist. LEXIS 23830, at *12–13 (E.D. Pa. Dec. 17, 2003) ("[T]he key to interpreting the anti-retaliation provision is the need to prevent employees' 'fear of economic retaliation' for voicing grievances about substandard conditions.").  Thus, the court finds that Fischer engaged in protected activity when she informed Calhoun of her belief that his proposed action would violate the FLSA.

The court also finds that Fischer suffered an adverse employment action when her employment was terminated.  And, there is sufficient evidence for a finder of fact to conclude that Fischer's employment termination "occurred under circumstances that could give rise to an inference of intentional discrimination." *Mandel*, 706 F.3d at 169.  Specifically, Fischer's employment was terminated two days after voicing her concerns under the FLSA.  (Doc. 37, pp. 69–71, 97.)

22

Viewing the facts in a light most favorable to Fischer as the non-movant, the court finds that the close temporal proximity is sufficient at this stage to set forth a prima facie case for FLSA retaliation. *Williams v. Phila. Hous. Auth. Police Dep't*, 380 F.3d 751, 760 (3d Cir. 2004) ("[T]emporal proximity between the protected activity and the termination [can be itself] sufficient to establish a causal link.") (internal quotation marks omitted); *see also Dougherty*, 2005 U.S. Dist. LEXIS 50529, at *2 (allowing a plaintiff to move forward with her case where she informed her employer that it was violating the FLSA and she was terminated the next day).

Because Fischer has established her prima facie case, the burden shifts to Cable Services to offer a legitimate nondiscriminatory reason for the adverse employment action. *Burton*, 707 F.3d at 426. In this case, as the court previously explained, Cable Services has met its burden of showing a legitimate nondiscriminatory reason for the adverse action against Fischer because it has offered evidence that Fischer's employment was terminated after she disparaged Cable Services and its president and could no longer be trusted to work in her capacity as Human Resources Manager with the company, a position which both parties recognize is one of trust. (Doc. 37, pp. 39, 264–65, 417, 437, 464.) There is also evidence in the record that Fischer's complaint regarding salaried employees' pay reduction under the FLSA was actually a professional and

collaborative discussion with Calhoun and Straub.  (*Id.* at 92–93, 574.)  In addition, it is undisputed that Calhoun and Kenneth Michaels agreed with Fischer's recommendations regarding the FLSA issue, and in fact adopted her recommendation such that Cable Services' policies did not change with respect to salaried employees' pay in the event of absence due to inclement weather.  (*Id.* at 93, 399, 574.)

Accordingly, the burden shifts back to Fischer to show that the proffered nondiscriminatory reason was a pretext for retaliation.  *Burton*, 707 F.3d at 427. To meet her burden at this stage, a plaintiff must "point to some evidence, direct or circumstantial, from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  *Id.* (quoting *Fuentes*, 32 F.3d at 764).

Fischer has not met her burden at the third stage of the *McDonnell Douglas* framework.  In support of her assertion that Cable Services' nondiscriminatory reason was pretext for retaliation, Fischer merely repeats her claims that the inconsistencies in Cable Service' reasons for termination combined with her performance history as the Human Resources Manager could lead a reasonable jury to conclude that the reasons for termination were weak and not credible. (Doc. 39, pp. 15–18.)  In addition, Fischer again argues that Cable Services treated

24

a similarly situated employee, Dana, more favorably than herself in terms of discipline, and that Kenneth Michaels failed to follow the company's disciplinary structure with respect to Fischer's employment termination.  (*Id.* at 18–22.) Because the court has already addressed and rejected Fischer's arguments regarding the alleged inconsistencies in Michaels' reasons for terminating her employment, Fischer's performance history, and Cable Services' treatment of Dana, the court will not address these arguments again here.  Thus, the court turns to Fischer's remaining argument to establish pretext: that Michaels failed to follow Cable Services' disciplinary progression when he terminated Fischer's employment.

The court recognizes that Cable Services' progressive discipline policy typically involves three to five steps, ending with termination as a last resort, and Michaels' acknowledgement that it was not a normal practice to terminate an employee for a single offense.  (Doc. 37, pp. 262–63, 267.)  However, Michaels also testified that there were reasons to skip or bypass certain levels of discipline based on the severity of the offense, and that he had skipped all levels and progressed straight to termination on two occasions where the conduct at issue was so serious that "there's no hope for that employee because we've exhausted all . . . corrective action and there has been no hope for them improving."  (*Id.* at 264.)  In

addition, Cable Services' disciplinary policy provides for termination resulting from a "single severe policy violation." (*Id.* at 266–67.)

Michaels testified that termination was warranted in this case due to a single severe offense, the disparaging comment made about the company and its president, and the court finds that Michaels' decision complied with this progressive disciplinary policy. It is undisputed that Fischer held a position of trust as the Human Resources Manager for Cable Services. In other words, Fischer represented the company when interacting with others in the office, including Cable Services' employees. Fischer's outburst, that she "hope[d] Ken [Michaels] drives this F-ing place in the ground," *Id.* at 85, was inappropriate and inconsistent with the expectations for her as the Human Resources Manager. Because Kenneth Michaels could no longer trust Fischer to act in Cable Services' best interest, he made the decision to terminate her employment. Thus, the court holds that a reasonable factfinder would not "either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Burton*, 707 F.3d at 427 (quoting *Fuentes*, 32 F.3d at 764). Therefore, the Defendant's motion for summary judgment is granted as to Fischer's FLSA retaliation claim.

## CONCLUSION

For the foregoing reasons, the court will grant summary judgment in favor of

Cable Services.  An appropriate order will issue.

s/Jennifer P. Wilson
JENNIFER P. WILSON
United States District Court Judge
Middle District of Pennsylvania

Dated: October 27, 2020